Reese, J.
delivered the following opinion.
Masterson, to secure a debt of about $1200, due from him to Mrs. Knowles, made a deed of mortgage of a lot in the town of Nashville, to Godfrey Fogg, for her benefit on 28th September, 1836, which was acknowledged on the same day, and registered 29th of September, 1835. On the 14th of February, 1838, he made a second deed of mortgage of the same lot, to Mr. M. B. Vance, to secure a debt of $2000, and the interest which had accrued and which might accrue upon the sum of $10,000, within a specified time. This deed was -acknowledged on the 6th of August, 1838, and was registered on the 10th of August, 1838. And on the 20th April, 1838, he made a third deed of mortgage to Crockett and Robinson of Nashville, of the same lot, for the benefit of Bierne and Burnside and other creditors, of the city of New Orleans. This deed was acknowledged before a Notary Public of New Orleans, and certified under his notarial seal the same day, and registered 21st of May, 1838.
*620 That the creditor in the first deed of mortgage, Mrs. Knowles-is entitled to priority of satisfaction, is not questioned by the parties to this controversy. But, whether the third deed of mortgage, the second one registered, for the benefit of Bierne and Burnside, and others, shall be postponed to the second deed of mortgage, the third one registered, for the benefit of said Vance, is the only question in dispute. It is argued on behalf of Vance, that this ought to be done, first, because, the 9th sec. of the act of 1831, ch. 90, which first empowered a Notary Public to take probate of deeds, limits his commission to proof by witnesses of the execution of deeds, and does not authorize a probate before him, by acknowledgment of the bargainor. The material words of that section are: “all deeds or conveyances, for land, made without the limits of this State, shall be proved as heretofore, or before a Notary Public, under his seal of office,” &c. The argument is, that the word proved, should have a restricted meaning, embracing proof by witnesses only, and not be understood, as the solemn authentication of the instrument, either by the proof of witnesses or by the acknowledgment of the bargainor. The very context in which the word proved is found, strongly repels this restricted meaning; for the same construction, which would limit the power of the Notary to proof, by witnesses only, would necessarily embrace, also, “all deeds or conveyances for land, made without the limits of this State,” and would involve the abolishment of all probates by acknowledgment of the bargainor, a great innovation; whereas the simple sense of the section announces the purpose of the legislature tobe, to continue the old modes of probate, with no other change, than the addition of the Notary Public to the list of functionaries having jurisdiction of probates.
The first, second, third, fourth and fifth sections of this statute, having specified the two modes of authenticating instruments by the proof of witnesses, and the acknowledgment of the bargainor, the 6 and 12 sections, which declare the legal effect of probate and registration, and of their omission, use the word proved as a generic term, embracing both modes of authentication. This is most obvious; and the 9th section most clearly uses the word in same sense. And this is a cor *621 rect use of the term. A deed is verified or proved, as well by the solemn acknowledgment of its execution by the bargainor as by the testimony of witnesses. The case of Scott vs. Read, 10 Peters’ 524, was determined, not upon the idea of any technical and restricted meaning of the word “proved” per se, but because of the addition thereto of the words, “by one or more of the subscribing witnesses” in the act of 1809, ch. 110, sec. 3, which specifically designated the one mode of probate in exclusion of the other.
But the counsel of Yance, in the second place, insist that the third mortgage, registered before the second, should be postponed to the latter, because at the time of the execution of the former, it was known to Burnside one of the creditors, and the agent of the rest, that Vance’s mortgage existed. The answer of the defendant, and the depositions of Masterson and Crockett satisfactorily establish as a fact that this knowledge did exist. The effect and operation of such knowledge is expressly declared in the 6th section of'the said act of 1831, where it is said, that “any deed of conveyance, bill of sale, or other instruments above mentioned, which shall be last executed but first registered, shall have preference thereof, unless it is proved, in a court of equity, according to the rules of said court, that such subsequent purchaser, had full notice of the previous conveyance.” And in the 12th sec., where it is said, that “all such deeds and other instruments mentioned in the first section of this act, not so proved and registered as aforesaid, shall be null and void, as to existing and subsequent creditors, or bona fide purchasers without notice.”
The object of the act is to make the deed first proved and registered, paramount and exclusively effective, subject only to be controlled in a court of chancery, as against a subsequent purchaser by his knowledge of a prior incumbrance. But it is argued, that mortgagees are not purchasers within the meaning of this statute. They are specifically enumerated in the first section; and the 6th and 12th sections, in declaring the legal effect of registration, and non-registration, distinctly refer to all the instruments set forth in the first section.
It is true that the act of 1715, made priority as to mortgages *622 after fifty days, to depend upon priority of registration, unaffected by notice. The evil set forth in the preamble to the act of 1831, and intended to be corrected is, “that deeds for the conveyance of land, mortgages, powers of attorney, bills of sale, and other instruments required by law to be registered, may be registered within twelve months of the execution thereof;” which tended to the commission of frauds. Then, the first section enumerates the several kinds of deeds, and among them mortgages, and points out in that section, and the following, to the 5th inclusive, the modes of probate and registration; the 6th and 12th sections, as we have seen, declare the legal effect of the probate and registration, or the omission to register. And it is seen, that mortgages are in terms embraced in them all. Mortgagees are, in general, purchasers; and they are so, within the words and meaning of this act. The same principle governs their registration; the same consequence results from their non-registration; the same effect is to be given in a court of chancery to the knowledge of their existence when unregistered.
' To hold the contrary would contradict not only the words of the statute, but disturb the unity, simplicity and harmony of the entire system, intended to be corrected by the registration act of 1831.
We are of opinion, therefore, that the mortgage of Bierne and Burnside and others, must be postponed to that of Vance.